

FILED

05/12/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2017 Session

**IN RE SYDNEY B.**

**Appeal from the Chancery Court for Coffee County**
**No. 2015-CV-175   L. Craig Johnson, Judge**

_____

**No. M2016-01236-COA-R3-PT**

_____

In this termination of parental rights case, prospective adoptive parents appeal the trial court's dismissal of their petition after finding that father did not willfully fail to pay support for the child. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Michelle Blaylock-Howser, Murfreesboro, Tennessee, for the appellants, Emery S. and Joseph S.

Jeremy W. Parham, Manchester, Tennessee, for the appellee, Chance B.

**Opinion**

**Background**

Sydney B. ("the child")[1] was born in October 2009 to Jessica W. ("Mother") and Chance B. ("Father"). Although the child's parents were never married, they lived together for a short period of time following the child's birth. On May 9, 2011, Petitioners/Appellants Joseph S. and Emery S. ("Appellants"), the child's maternal great uncle and great aunt, obtained physical custody of the child. Appellants thereafter filed a petition for legal guardianship of the child. Mother consented to the order of guardianship. Father was incarcerated at the time of the guardianship proceedings.[2]

---

[1] In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

[2] There is no dispute that Father was incarcerated from April 2011 to April 2014 and then again

Father did not participate in the guardianship proceeding and a default judgment was entered against him. An order was entered awarding Appellants legal guardianship of the child on August 30, 2012.

On December 11, 2014, Father filed a parentage petition in the Coffee County Juvenile Court ("juvenile court") asking to be named the child's legal father, to be awarded parenting time with the child, and for "other relief."[3] This petition did not specifically make any mention of child support. On January 7, 2015, the parties entered into an agreed temporary order allowing Father supervised parenting time with the child in December 2014 and January 2015 so long as Father "submitted to and passed a hair follicle drug screening." According to Father, he maintained regular overnight visitation not only in December 2014 and January 2015, but until May 2015 when Appellants terminated Father's visitation.

The temporary agreed order further provided that the parties would participate in mediation and attend a court-approved parenting class. The parties attended mediation in February 2015, and a hand-written agreement was signed by the parties. The mediated agreement provided for a parenting time schedule and stated that "child support will be established including retroactive support." However, Father refused to sign the formalized agreement, alleging that Appellants attempted to change some of the previously agreed upon terms.[4] It is undisputed that no child support order was ever entered.

On June 9, 2015, Appellants filed a petition to terminate the parental rights of Father and Mother and for adoption in the Coffee County Chancery Court ("trial court"). The petition alleged the following grounds against Father: (1) willful failure to support; and (2) willful failure to visit.[5] Thereafter, Father filed a motion in the trial court to resume parenting time with the child. Again, the motion did not mention child support.

---

from July 2014 to November 2014.

[3] Nothing in the record on appeal reflects that this petition was ever resolved, but there is no dispute in this case that Father is the legal and biological parent of the child. Indeed, in a later brief to the trial court in their termination of parental rights action, Appellants noted that Father had executed a voluntary acknowledgement of paternity and conceded that he was, therefore, the legal father of the child for purposes of the termination action. *See* Tenn. Code Ann. § 36-1-102(28)(A) (providing that the biological father of the child is a legal parent where he has signed a voluntary acknowledgment of paternity). *Compare* Tenn. Code Ann. § 36-1-113(g)(1)–(8) (outlining the grounds for termination for legal parents), *with* Tenn. Code Ann. § 36-1-113(g)(9) (outlining grounds for termination applicable to putative fathers who are not the legal parent of the child).

[4] Specifically, Father took issue with a requirement that he not only take the child to soccer, as he had previously agreed, but also to "every single extracurricular activity she was enrolled in." Father took issue with this requirement due to the driving that would be required, as well as the fact that such activities would monopolize his allotted time.

[5] The petition also alleged the same grounds against Mother. Mother is not a party to this appeal, however, because her parental rights were terminated by consent.

A trial occurred on January 8, 2016. At the beginning of trial, Father moved for bifurcation of the proceeding and, with no objection, the trial court heard proof as to grounds for termination only. There was no dispute that Father paid no support for the child in the four months prior to the filing of the termination petition. Father also acknowledged that he had a duty to support the child. Father testified he was working at Quality Coverings during the relevant period and that he could have paid support; however, because Appellants never asked him to pay and he was waiting for a child support order to be entered, he never paid child support prior to the termination petition. Father agreed that one reason he did not pay support was because Appellants "weren't letting [him] see [the child]." When Father attempted to pay child support in October through December of 2015, Appellants refused to accept payment.[6]

On March 15, 2016, the trial court issued its opinion, and the final order was filed on May 25, 2016. Therein, the trial court found that, because Father was in active litigation to establish a visitation schedule and had filed two separate motions to establish visitation, Father's conduct was not willful with respect to both failure to visit and failure to support. As a result, the trial court concluded that Appellants' petition "fail[ed] in that the Father's conduct was not willful in failing to visit or support due to the impending litigation to establish paternity, visitation[,] and support." Appellants thereafter appealed to this Court.[7]

## Issue Presented

Appellants raise one issue in this appeal: Whether the trial court erred in failing to find clear and convincing evidence of abandonment by willful failure to support under Tennessee Code Annotated section 36-1-102(1)(A)(i).[8]

## Analysis

---

[6] Father admitted at trial that the money orders were from his grandparents' address and in their handwriting. Father asserted, however, that grandparents were paying the support as payment for work he performed for them.

[7] On March 23, 2017, this Court filed an order directing Appellants to obtain entry of a final judgment in the trial court because the trial court's original order failed to adjudicate Mother's parental rights or make the order final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Accordingly, the trial court submitted an amended order on March 31, 2017, essentially noting that Mother's parental rights had been terminated by consent.

[8] Appellants do not challenge the trial court's finding that they failed to prove abandonment by willful failure to visit. The Tennessee Supreme Court in *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), ruled that this Court must consider all of the grounds found by the trial court, "regardless of whether **the parent** challenges these findings on appeal." *Id.* at 525–26 (emphasis added). The rule adopted in *Carrington* has never been construed to require this Court to also consider the grounds not sustained by the trial court and thereafter appealed by the non-parent. Accordingly, we will only consider the ground appealed by Appellants in this case.

According to the Tennessee Supreme Court:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

As our supreme court opined:

The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de

novo with no presumption of correctness. ***In re M.L.P.***, 281 S.W.3d [387,] 393 [(Tenn. Ct. App. 2009)] (quoting ***In re Adoption of A.M.H.***, 215 S.W.3d [793], 810 [(Tenn. 2007)]). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. ***In re Angela E.***, 303 S.W.3d at 246.

***Carrington H.***, 2016 WL 819593, at *12.

When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See* ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

The sole issue on appeal is whether the trial court erred in dismissing Appellants' petition for termination of Father's parental rights based on abandonment by willful failure to support. Tennessee Code Annotated section 36-1-1-113(g)(1) provides that initiation of termination of parental rights may be based upon "[a]bandonment by the parent or guardian, as defined in [section] 36-1-102." Tennessee Code Annotated section 36-1-102(1)(A)(i) defines "abandonment," in relevant part, as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

For purposes of this subdivision, "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the "willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D).[9]

---

[9] Token support means that "the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

Here, there is no dispute that Father failed to pay any support for the child in the four months preceding the filing of the termination petition, i.e., between February 9, 2015, and June 8, 2015. The only question in this appeal is whether Father's failure was willful. This Court has explained:

"Willfulness" does not require the same standard of culpability required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*In re Audrey S.*, 182 S.W.3d 838, 863–64 (Tenn. Ct. App. 2005) (internal citations omitted).

Parents are presumed to know they have a legal obligation to support their children. *See* Tenn. Code Ann. § 36-1-102(1)(H). Moreover, it is well-settled in Tennessee that:

[B]iological parents must, as a general matter, support their children until they reach the age of majority. . . . The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married."

*State ex rel. Hayes v. Carter*, No. W2005-02136-COA-R3-JV, 2006 WL 2002577, at *2 (Tenn. Ct. App. July 6, 2006) (citing Tenn. Code Ann. § 34–1–102(a); *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987)); *see also State Dep't of Human Servs. v. Manier*, No. 01A01-9703-JV-00116, 1997 WL 675209, at *5 (Tenn. Ct. App. Oct. 31, 1997) ("We dare say that the support of one's children should not be conditioned upon whether one has been placed under a court order to do so."). The obligation to pay child support therefore exists even without a court order requiring the payment of child support. *State, Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 523–34 (Tenn. Ct. App. 2004). "Abandonment [by failure to support] may not be repented of by resuming . . . support subsequent to the filing of any petition seeking to terminate parental . . . rights or seeking the adoption of a child[.]" Tenn. Code Ann. § 36-1-102(1)(F); *see also In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (quoting Tenn. Code Ann. § 36-1-102(1)(F)) ("A parent may not attempt to rectify abandonment by resuming payments of support subsequent to the filing of 'any petition' seeking to terminate parental rights or seeking to adopt a child."). "However, we must consider the entire 'constellation of facts' when making a determination of whether a parent's failure to financially support their child was willful." *In re Makenzie L.*, No. M2014-01081-COA-R3-PT, 2015 WL 3793788, at *18 (Tenn. Ct. App. June 17, 2015), *perm. app. denied*

(Oct. 15, 2015) (quoting *In re Kaleb N.F.*, No. M2012-00881-COA-R3-PT, 2013 WL 1087561, at \*23 (Tenn. Ct. App. Mar. 12, 2013)).

In determining that Father's failure to support the child was not willful, the trial court found that Father filed two separate motions to set parenting time with the child. The trial court cited the Tennessee Supreme Court's opinion in *In re Adoption of A.M.H.*, 215 S.W.3d 793 (Tenn. 2007) for the proposition that "a parent cannot be found to have abandoned a child when [he or she is] actively seeking to establish visitation." In *In re Adoption of A.M.H.*, the parents' parental rights were terminated based on abandonment of the child for willful failure to visit for four months preceding the filing of the termination petition and that termination of parental rights was in the best interest of the child. *A.M.H.*, 215 S.W.3d at 806. Although it is undisputed that the parents failed to visit the child during the four-month period at issue, the parents were "actively pursu[ing] legal proceedings to regain custody of [the child] during the 'abandonment' period[.]" *Id.* at 810. As a result, the Supreme Court reversed the termination of the parents' parental rights under this ground because the failure to visit was not "willful." *Id.* at 810–11.

The holding in *In re Adoption of A.M.H.* was applied in the context of child support by this Court in *In re Chelbie F.*, No. M2006-01889-COA-R3-PT, 2007 WL 1241252 (Tenn. Ct. App. Apr. 27, 2007). In *In re Chelbie*, the father's parental rights were terminated based on abandonment for both willful failure to visit and support. The Court of Appeals reversed as to both grounds, holding instead that the Tennessee Supreme Court's decision in *In re Adoption of A.M.H.* "controls the outcome of this case" even with regard to the father's failure to pay child support. *Id.* at \*6. Although the Court of Appeals acknowledged that *In re Adoption of A.M.H.* addressed specifically the issue of willful failure to visit, the Court of Appeals believed that it had "no reason to conclude that the same principle should not be applied to willful failure to support claims when a party is actively seeking to establish a child support payment." *Id.* As a result, the Court of Appeals held that father's failure to support was not willful because he "was pursuing a petition to establish his visitation rights and support obligations before the petition to terminate his parental rights was filed." *Id.*

Appellants argue, however, that more recent caselaw supports the opposite conclusion. *See In re Makenzie L.*, No. M2014-01081-COA-R3-PT, 2015 WL 3793788 (Tenn. Ct. App. June 17, 2015), *perm. app. denied* (Oct. 15, 2015). In *In re Makenzie*, the parents testified at trial that they had expended over $100,000.00 in order to regain custody of their child. The parents also pointed out that they had never been ordered to pay support or asked by prospective adoptive parents to provide support for the child. Finally, the parents contended that they had "cooperated" with a petition filed by Child Support Division of the District Attorney to establish child support. Like the trial court in this case, the trial court declined to find the parent's failure to pay child support willful

because they were actively engaged in child custody litigation during the four-month period at issue. *Id.* at 11.

The Court of Appeals rejected each argument raised by parents. As an initial matter, the court noted that there was no dispute that the parents had not paid any support during the relevant period, despite the ability to do so. *Id.* at 18. The court disagreed with parents' argument that they were "seeking to support" the child through their efforts to regain custody. Instead, the court held that effort to establish custody or visitation does not negate the fact that a parent has failed to pay support for his or her child. *Id.* at 19 ("Parents who are 'actively seeking custody' through the judicial process are not providing support for their children as contemplated by Tenn. Code Ann. § 36-1-102(1)(A)(i)."). The court also disagreed with parents' characterization of their cooperation with the pending child support proceeding. Rather, the court noted that after being served with the petition, parents took no action to actually attempt to establish support for the child. *Id.* at 19. Finally, the court declined to conclude that parents' failure to support was excused by the absence of a court order requiring them to do so. In reaching this result, the Court of Appeals noted that:

> [T]he law is clear that parents have a duty to support their children even absent a court order requiring them to do so. *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn.2004). Thus, even if the parents "were following the process of the Child Support Division of the District Attorney in establishing any support that may have been due," as the trial court stated, this fact alone does not justify a determination that their failure to support was not willful, nor does it absolve them from the responsibility to support their child financially while the matter was pending a final resolution.

*In re Makenzie*, 2015 WL 3793788, at *20.

Here, we agree with Appellants that clear and convincing evidence was shown that Father willfully failed to support the child during the relevant period. First, unlike the typical case, there is no dispute in this case that Father had the ability to pay support for the child. Likewise, Father admitted that he was aware of his obligation to provide support. Father asserts, however, that his failure to provide support was justified because Father was involved in "active, pending custody and support litigation at the time the petition was filed." Respectfully, we cannot agree.

We concede that at the time that Appellants' termination petition was filed, Father's petition in the juvenile court to determine the child's parentage and set visitation was still pending.[10] Father's efforts to establish parenting time with the child, however,

---

[10] We note, however, that nothing in the record reflects that Father was actively prosecuting his petition from the time the January 2015 temporary order was entered until the termination petition was

- 8 -

did not include any effort to establish child support. Indeed, none of the pleadings seeking to establish visitation filed by Father in either the juvenile court or the trial court in any way mention child support. Accordingly, the facts of this case are simply not analogous to the facts in *In re Chelbie*, in which this Court repeatedly emphasized that the parent in that case was "actively seeking to establish" both visitation and support through judicial proceedings. *In re Chelbie*, 2007 WL 1241252, at *6.[11]

The situation in this case is therefore more closely akin to *In re Makenzie* than *In re Chelbie*. Here, Father knew of his obligation to support the child, but did nothing to meet that obligation. At trial, Father admitted that his failure to pay support was because: (1) no child support order was ever entered directing him to do so; and (2) Appellants "weren't letting [him] see [the child]." Neither excuse holds weight in this Court. *See In re Brookelyn W.*, No. W2014-00850-COA-R3-PT, 2015 WL 1383755, at *12 (Tenn. Ct. App. Mar. 24, 2015) (holding that the father's inability to visit the child was no excuse for his failure to pay child support) (citing *In re Audrey*, 182 S.W.3d at 864 ("The parental duty of visitation is separate and distinct from the parental duty of support.")); *State, Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 523–34 (Tenn. Ct. App. 2004) (holding that parents owe an obligation to pay child support regardless of a court order requiring them to do so). Indeed, this Court in *Makenzie* expressly rejected similar arguments made by parents. *See In re Makenzie*, 2015 WL 3793788, at *19–20.

Here, regardless of his efforts to establish visitation with the child, there can be no dispute that Father was not providing support to the child, despite the ability to do so. *See In re Makenzie*, 2015 WL 3793788, at *20 (holding that the fact that parents were actively engaged in litigation to regain custody did not excuse their failure to support the child). Moreover, the lack of a court order that Father partially blames for his failure to provide support is largely the result of his own conduct. As previously discussed, Father and Appellants agreed at mediation that Father would pay child support, both retroactive and ongoing. Thereafter, it was Father that refused to honor the parties' agreement based upon a purported disparity regarding the child's extracurricular activities. Although Father did not disagree with his previous agreement to pay child support, he made no effort to do so during the relevant four-month period. Clearly then, Father's decision to withhold support from his child was "the product of free will rather than coercion[.]" *In*

---

filed in June 2015. Indeed, the record on appeal contains no pleadings filed in the juvenile court during this interim time period.

[11] At oral argument, counsel for Father argued that a request to set child support was "inherent in [Father's] motion[.]" While a court may have been required to set child support in conjunction with Father's request for visitation, *see generally Leonardo v. Leonardo*, No. M2014-00372-COA-R3-CV, 2015 WL 3852802 (Tenn. Ct. App. June 18, 2015), *vacated in part* (Tenn. Nov. 24, 2015) (Stafford, J., dissenting), we cannot agree that a mere "inherent" request to set child support is sufficient to bring Father within the rule set forth in *Chelbie*. An unstated, yet "inherent" request buried in the penumbra of Father's pleadings certainly cannot qualify as an "active[]" effort on Father's part to establish child support. *Chelbie*, 2007 WL 1241252, at *6.

*re Audrey*, 182 S.W.3d at 863. Consequently, like in *In re Makenzie*, we also conclude that Father's participation in judicial proceedings to establish visitation with the child does not excuse his failure to pay support.

Father asserts in his brief, however, that he did pay support "once it became clear that the mediation agreement was not going to be formalized." We cannot agree with Father's characterization of his efforts. First, we note that Father admits that the hand-written mediation agreement was signed in February 2015. Father's first support payment occurred in October 2015, approximately seven months later. Accordingly, Father was aware for several months of his duty to support the child but only attempted to provide support four months after the termination petition was filed. Moreover, these payments were made even though no formal support order had yet been entered. Accordingly, it stretches credulity to believe that Father could not likewise have attempted to provide support for the child in the absence of a court order prior to the filing of the termination petition. Rather, Father's efforts in the fall of 2015 were "simply too little, too late." *In re Michael*, No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *16 (Tenn. Ct. App. Oct. 6, 2016) (citing *In re K.M.K.*, No. E20140-00471-COA-R3-PT, 2015 WL 866730, at *6 (Tenn. Ct. App. Feb. 27, 2015) (holding that father's efforts after the termination petition was filed were "too little, too late"); *In re A.W.*, 114 S.W.3d 541, 546 (Tenn. Ct. App. 2003) (holding that mother's improvement only a few months prior to trial was "[t]oo little, too late")). As such, Father's attempts at sending child support payments to Appellants only after the termination petition had already been filed did not, in our opinion, alleviate the fact that he consciously chose to withhold child support when he concededly was aware of his legal obligation to do so. *See* Tenn. Code Ann. § 36-1-102(1)(F).

Here, the record contains clear and convincing evidence that Father willfully failed to pay support for the child in the four months preceding the filing of the termination petition. Accordingly, we reverse the trial court and, instead, conclude that a ground for termination exists under Tennessee Code Annotated sections 36-1-1-113(g)(1) and 36-1-102(1)(A)(i). When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). Here, the trial court bifurcated the proceedings and therefore did not hear evidence concerning whether termination of Father's parental rights was in the child's best interests. Accordingly, this cause must be remanded to the trial court for a hearing on this issue.

### Conclusion

The judgment of the Coffee County Chancery Court is reversed and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee, Chance B., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE