FILED
08/21/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2019 Session

**IN RE KINGSTON A. B.**

**Appeal from the Circuit Court for Montgomery County**
**No. CC17-CV-1496      Ross H. Hicks, Judge**

_____

**No. M2018-02164-COA-R3-PT**

_____

Father and Step-Mother filed a petition to terminate Mother's parental rights on the grounds of willful failure to visit and support. The trial court denied termination based upon willful failure to visit, but found sufficient evidence in favor of willful failure to support. The trial court, however, found that termination was not in the child's best interest and therefore denied the petition to terminate Mother's parental rights. Because we conclude that clear and convincing evidence does not support the ground of willful failure to support, we reverse the trial court's finding of a ground to support termination. As such, we affirm the trial court's denial of the termination petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; and Affirmed in Part**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Christopher J. Pittman and Hollie L. Smith, Clarksville, Tennessee, for the appellants, Tyler E. B., and Shelby L. B.

Erin S. Poland, Clarksville, Tennessee, for the appellee, Kaitlin A. V.

**OPINION**

**I.      FACTS AND PROCEDURAL HISTORY**

Appellee Kaitlin A.V. ("Mother") gave birth to the child, Kingston A.B., in February 2013 when she was seventeen years old.[1] Appellant Tyler E.B. ("Father") was eventually determined to be the father of the child pursuant to court-ordered DNA

---

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

testing.[2] At the time of the birth, Father was approximately twenty-six years old. Mother cared for the child exclusively for the first two years of his life; however, Mother was arrested in January 2015 for an outstanding criminal matter. On January 29, 2015, the Juvenile Court of Montgomery County ("the juvenile court") entered an order granting Father's motion for ex parte emergency custody. The order gave Father sole custody of the child until further orders of the court and suspended Father's child support obligation. Mother was not granted any visitation in this order. On February 5, 2015, the juvenile court extended Father's sole custody, but noted that Mother could file a motion seeking review of the order granting custody.

At some point, Mother filed a motion to dismiss the ex parte custody order. After an evidentiary hearing, the juvenile court entered an order on April 29, 2015, denying Mother's motion, but granting Mother supervised visitation for several hours every other weekend. The court noted that supervision was necessary due to Mother's long-term drug issues. The juvenile court also ordered both parents to participate in hair follicle drug screenings.

Thereafter, Father filed a motion to suspend Mother's visitation. Mother did not appear at the hearing on the motion. As such, on or about December 22, 2016, the juvenile court granted the motion and suspended Mother's visitation. The order noted, however, that Mother's parents could continue to visit at Father's discretion. The juvenile court also noted that Father could allow telephonic visitation with Mother. On or about March 6, 2017, the juvenile court entered a final order adopting Father's proposed parenting plan and stating that its previous order suspending Mother's visitation "is deemed to be a final [o]rder." Under this order, Mother had no visitation with the child, but Mother was ordered to pay $296.00 per month in child support.

In the meantime, Father married Shelby L.B. ("Step-Mother") in October 2015.[3] On July 21, 2017, Father and Step-Mother (together, "Petitioners") filed a petition for termination of Mother's parental rights in the Montgomery County Circuit Court ("the trial court"). The petition alleged that Mother had abandoned the child by willfully failing to visit or support the child "for a period of four or more consecutive months." The petition further stated that Mother was currently incarcerated. Mother filed two handwritten responses to the petition in August 2017, seeking appointment of counsel and denial of the petition. Mother was subsequently appointed counsel, and the child was appointed a guardian ad litem. Mother, by and through her counsel, thereafter filed a formal answer to the petition on November 28, 2017. The trial judge entered an order of recusal on January 18, 2018, and the case was transferred to the Honorable Ross H. Hicks.

---

[2] The parties dispute whether Father initially had knowledge of the child's parentage.
[3] Step-Mother was eighteen years old at the time of the marriage. Father was approximately twenty-eight.

A hearing was eventually held on May 29, 2018. Father and Step-Mother testified that Mother did not visit or support the child in the four months prior to the termination proceeding. They also testified that due to behavioral issues affecting the child following contact with Mother, Father exercised his discretion to prohibit phone contact between Mother and the child. Both Father and Step-Mother admitted that the child had a close and loving relationship with his maternal grandparents and Mother's extended family and that the child would benefit from maintaining that relationship. Mother and Step-Father testified, however, that Mother's relationship with the child was strained due to her drug use and incarceration. Step-Mother noted that the child calls Mother "Mommy," while he calls Step-Mother "Mom." According to both Father and Step-Mother, the child is happy, healthy, and well-adjusted in their care. In contrast, they testified that Mother's involvement with the child results in negative effects on the child's emotional health and behavior for up to a week after contact.

Mother testified that she has had issues with illegal drug use since her teens, although she testified that she managed to stay clean during her pregnancy. Following the birth of the child, Mother and the child lived with maternal grandmother. Father only began paying child support after a court-ordered DNA test was performed. Mother testified that she was first incarcerated on January 21, 2015, and released on probation on February 2, 2015. Mother thereafter obtained employment and worked in a reasonably consistent manner, though she made no effort to pay child support. Mother was also able to exercise supervised visitation following her release, but the visitation was eventually terminated because Mother returned to illegal drug use.[4] Eventually, Mother returned to jail on March 16, 2017, due to a violation of probation related to her refusal to meet with her probation officer. Mother remained in jail for a short period of time before she was released to a rehabilitation center on April 14, 2017. Mother only stayed at this rehabilitation center for approximately three weeks before voluntarily leaving on May 9, 2017. Mother was thereafter in the community for a period of approximately two weeks before she turned herself in to jail on or about May 25, 2017. Mother was then required to serve approximately three-and-one-half months in jail. She was released to an inpatient rehabilitation facility, Grace Recovery Home, on September 8, 2018. Mother remained in this recovery home at the time of trial but had been able to obtain gainful employment as of late October 2017. Mother did not begin paying child support until January 2018. According to Mother, she has maintained her sobriety by the time of trial for over a year and was scheduled to graduate from Grace Recovery Home in September 2018.

At the conclusion of the hearing, the trial court requested that both parties and the guardian ad litem present proposed findings of fact and conclusions of law. The trial court thereafter entered a written order denying the termination petition on September 10, 2018. Therein, the trial court found that Petitioners had proven the ground of willful failure to support because "Mother obtained a job while she was in the inpatient

---

[4] In fact, both of Mother's parents, who were the supervisors, refused to supervise future visits due to her relapse.

rehabilitation facility and was capable of paying child support but did not." The trial court denied termination on the ground of failure to visit because Mother had attempted to reinstate visitation. The trial court next considered the best interest factors, but ultimately concluded that the child's best interest was not furthered by terminating his relationship with Mother and Mother's extended family. Petitioners filed a motion to alter or amend the trial court's taxation of costs, which was denied with additional clarification. Petitioners filed a timely notice of appeal.

## II.  ISSUES PRESENTED

Each party raises different issues in this case. As we perceive it, the combined issues are as follows:

1.    Whether the trial court erred in findings grounds for termination of parental rights had been established by clear and convincing evidence.

2.    Whether the trial court properly concluded that it was not in the best interest of the child for Mother's parental rights to be terminated.

3.    Whether the findings of fact and conclusions of law were supported by the independent judgment of the trial court and should be upheld.

## III.  STANDARD OF REVIEW

The Tennessee Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies

"'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523−24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

### DISCUSSION

The trial court found only one ground for termination of Mother's parental rights: abandonment by willful failure to support.[5] Abandonment is a statutory ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). Both parties concede that the definition for abandonment relied upon in Petitioner's termination petition is found at Tennessee Code Annotated section 36-1-102(1)(A)(i), which provides that abandonment occurs when,

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . .[[6]]

Willful failure to support or willful failure "to make reasonable payments toward the support of the child" means "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child . . . ." Tenn. Code Ann. § 36-1-102(1)(D).

The applicable statutory definition of "abandonment" requires us to focus on the "period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights[.]" Tenn. Code Ann. § 36-1-102(1)(A)(i). In the present case, the four-month period for purposes of establishing abandonment by failure to support is March 21, 2017, until July 20, 2017, the day before the petition was filed.

A central inquiry a court must make when determining whether a parent abandoned their child pursuant to the version of section 36-1-102(1)(A) at issue is whether the abandonment was willful. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). As this Court has previously explained,

---

[5] Although Petitioners also alleged abandonment by willful failure to visit, the trial court did not find clear and convincing evidence to support this ground. Petitioners have not appealed that finding. The Tennessee Supreme Court has directed this Court to consider the trial court's findings as to each ground for termination regardless of whether the parent challenges the trial court's findings on appeal. **In re Carrington H.**, 483 S.W.3d at 525–26. "The rule adopted in **Carrington** has never been construed to require this Court to also consider the grounds not sustained by the trial court" and not challenged on appeal by the petitioner. **In re Sydney B.**, 537 S.W.3d 452, 456 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Aug. 1, 2017). As such, this Court is not required to review this ground for termination.

[6] Section 36-1-102(1)(A)(i) was amended in 2018 to delete the words "willfully" from the statute and instead make the lack of willfulness an affirmative defense. *See* 2018 Tenn. Laws Pub. Ch. 875 (H.B. 1856) (effective July 11, 2018); *see also* Tenn. Code Ann. 36-1-102(1)(I) (2018) (making lack of willfulness an affirmative defense). There is no dispute that the amendment is inapplicable in this case.

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty[] or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child[.] The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863−64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). As previously discussed, this Court reviews questions of law *de novo* with no presumption of correctness. *Id.*

There was no dispute at trial that Mother did not pay any support during the relevant four-month period. The question, however, is whether Mother's failure to pay support during this time was willful. In finding that Mother's failure was willful, the trial court made the following relevant finding:

> That the Mother obtained a job while she was in the inpatient rehabilitation facility and was capable of paying child support but did not. Therefore, the Court finds that by clear and convincing evidence that the Mother did not support the child for 4 months preceding the filing of this petition.

Likewise, other than citing the general law on this topic, Petitioner's only argument as to this ground is that Mother was capable of paying support during the relevant period because Mother "obtained a job while she was in the inpatient rehabilitation facility and was capable of paying child support but did not." Respectfully, these facts do not support a finding that this ground was proven by clear and convincing evidence.

Both the trial court and Petitioners make much of the fact that Mother obtained employment once she began her inpatient rehabilitation. The trial court's findings of fact indicate that Mother entered the rehabilitation facility in Russellville, Kentucky in March 2017.[7] The undisputed testimony of both Mother and the pastor of Grace Recovery Home, however, is that Mother did not begin her treatment at this facility until September 2017, well after the filing of the termination petition. As such, this employment is simply not relevant to the question of whether Mother's failure to pay support during the relevant period preceding the filing of the termination petition was willful.

Even disregarding the trial court's findings and reviewing the record ourselves, we cannot conclude that the record contains clear and convincing evidence that Mother was capable of paying support during the relevant period. The evidence submitted at trial shows that Mother was incarcerated or in treatment for all but approximately two weeks between March 21, 2017, and July 20, 2017. There is no dispute that she was not employed during this time. Indeed, this court has previously noted that a "parent's incarceration provides a ready-made excuse for his or her failure to visit or support the child during the four-month period made relevant by the first statutory definition of abandonment." *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005) (noting that this issue was the impetus for the fourth definition of abandonment contained in section 36-1-102(1)).[8]

---

[7] Specifically, the trial court's findings state that "Mother was incarcerated from November 2016 to March 2017, at which time she entered a religious based inpatient rehabilitation facility, in Russellville, Kentucky." Mother was not incarcerated from November 2016 to March 2017, but from March 2017 to September 2017, with a short two week break, as noted above. Mother's previous incarceration ended in February 2015.

[8] Although this definition may have been apt, Petitioners did not specifically rely on section 36-1-102(1)(A)(iv) in their termination petition. Moreover, the trial court appeared to rely only on section 36-1-102(1)(A)(i) in finding that Mother abandoned the child by failing to support him, as the trial court specifically noted the applicable period was the four months preceding the filing of the termination petition. Finally, as previously discussed, Petitioners cite only on section 36-1-102(1)(A)(i) in their brief to this Court. As such, we will not consider this definition for purposes of this appeal.

Finally, even considering the short periods of time that that Mother was not incarcerated and hypothetically could have been employed, there is simply no evidence in the record that Mother was otherwise capable of paying support during this period or any period prior to the filing of the termination petition, as the record contains no proof concerning any purported income or expenses incurred by Mother. *See In re Noah B.B.*, No. E2014-01676-COA-R3-PT, 2015 WL 1186018, at \*8–\*9 (Tenn. Ct. App. March 12, 2015) (holding that although mother affirmatively answered that she was working during the four-month time period, DCS failed to prove by clear and convincing evidence she willfully failed to support child because DCS did not provide "evidence of [m]other's employment status, . . . the number of hours she worked, the duration of her employment, her rate of pay, or whether [m]other had assets other than regular income that might contribute to support of the child."); *In re Josephine E.M.C.*, 2014 WL 1515485, at \*17–\*18 (holding that DCS failed to prove by clear and convincing evidence that mother had the capacity to support the child and had no justifiable excuse for not doing so even though mother worked two jobs on occasion and had previously been ordered to pay support because "there was little to no evidence presented at trial regarding Mother's income and expenses").

The "burden to prove Mother's abandonment by willful failure to support rests squarely on" Petitioners. *In re Noah B.B.*, 2015 WL 1186018, at \*9. The record on appeal, however, does not show that Mother had any capacity to pay support during the relevant period. Moreover, the trial court's only finding on this issue, that Mother obtained employment well after the filing of the termination petition, is insufficient to support this ground for termination. As such, the trial court's finding that a ground for termination had been shown by clear and convincing evidence is reversed. In the absence of a ground for termination, we do not proceed to consider whether termination would be in the child's best interest. *See In re Askia K.B.*, No. W2010-02496-COA-R3-PT, 2011 WL 4634241, at \*12 (Tenn. Ct. App. Oct. 7, 2011) ("[I]n the absence of grounds for termination, the termination of [] parental rights must be reversed."); *see also, e.g., In re Ethan B.*, No. M2017-00967-COA-R3-PT, 2018 WL 2438207, at \*6 (Tenn. Ct. App. May 30, 2018) (pretermitting best interest where no ground was shown); *In re Emma S.*, No. M2017-01243-COA-R3-PT, 2018 WL 2041574, at \*9 (Tenn. Ct. App. Apr. 30, 2018) (same); *In re Damien G. M.*, No. E2016-02063-COA-R3-PT, 2017 WL 1733867, at \*10 (Tenn. Ct. App. May 3, 2017) ("Having determined that none of the grounds for termination of parental rights is met in this case, we pretermit the best interest discussion."); *In re Karissa V.*, No. E2016-00395-COA-R3-PT, 2017 WL 758513, at \*14 (Tenn. Ct. App. Feb. 27, 2017), *perm. app. denied* (Tenn. 2017) ("Because we reverse both grounds found against Mother, the issue of best interest is pretermitted as to her."). We also pretermit Petitioner's issue regarding the sufficiency of the trial court's order.[9]

---

[9] We must note, however, a procedural deficiency in Petitioner's argument on this issue. Here, Petitioner's contend that the trial court's findings on best interest do not comply with *Smith v. UHS of*

### III.    CONCLUSION

The judgment of the Montgomery County Circuit Court is reversed in part and affirmed in part. This cause is remanded to the trial court for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to appellants, Tyler E.B. and Shelby L.B., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

***Lakeside, Inc.***, 439 S.W.3d 303 (Tenn. 2014), as the trial court improperly adopted the proposed findings of the guardian ad litem. The guardian ad litem's proposed order, however, is not contained in the record on appeal. Rather, it is only attached as an exhibit to Petitioners' brief. It is well-settled that this Court cannot consider documents attached to briefs that were not properly made a part of the appellate record. *See **Carney v. State***, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *4 (Tenn. Crim. App. Oct. 17, 2007) (stating that "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal") (internal citation omitted); ***Forrest v. Rees***, No. 01C01-9411-CC-00387, 1996 WL 571765, at *3 (Tenn. Crim. App. Oct. 8, 1996) (stating that "attachments to briefs are not evidence and will not be considered by the appellate courts"); ***Pinney v. Tarpley***, 686 S.W.2d 574, 579 (Tenn. Ct. App. 1984) (stating that "[m]erely attaching a document to a pleading does not place that document in evidence"). Because the guardian ad litem's proposed order is not included in the record on appeal, we are prevented from considering any alleged similarities between the factual findings and legal conclusions in the proposed order and the order entered by the trial court. Moreover, we have independently reviewed the evidence presented in this case regardless of the trial court's findings and determined that the evidence was insufficient to establish a ground for termination.