IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2019

## IN RE O.W., JR. ET AL.

**Appeal from the Juvenile Court for Shelby County**
**No. DD4263            Harold W. Horne, Special Judge**

_____

### No. W2019-01127-COA-R3-PT
_____

Father appeals the termination of his parental rights, arguing that one ground for termination was not proven and that the trial court's ruling as to that ground did not reflect its independent judgment and did not include sufficient findings of fact and conclusions of law. After a thorough review of the record, we affirm five grounds for termination and vacate the ground of failure to manifest an ability and willingness to parent the children. We also affirm the trial court's finding that termination is in the child's best interest. As such, we affirm the termination of Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part; and Vacated in Part**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and ANDY D. BENNETT, JJ., joined.

Brandi L. Heiden, Memphis, Tennessee, for the appellant, O.W., Sr.

Herbert H. Slatery, III, Attorney General and Reporter; and Kathryn A. Baker, Senior Assistant Attorney General; for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. BACKGROUND

This case involves the termination of the parent rights of Respondent/Appellant O.W., Sr., ("Father") to his two children, O.W., Jr., ("O.W."), born in 2013, and O.G., born in 2015.[1] The children were placed in the emergency custody of Petitioner/Appellee

---

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

Tennessee Department of Children's Services ("DCS") on December 3, 2015 after two of their half-siblings told authorities that Father had sexually abused them. Father was incarcerated in December 2015 after being charged with rape of a child.

On December 9, 2015, a pending petition to find another child of April G. ("Mother") dependent and neglected was amended to include O.W. and O.G.; the petition asked that temporary custody of the children be awarded to DCS. On the same day, a magistrate in the Shelby County Juvenile Court ("the trial court") entered a protective custody order that placed O.W. and O.G. in the temporary custody of DCS. A subsequent order from the trial court prevented Father from contacting both children. The children were declared dependent and neglected by the magistrate on April 15, 2016. While making that finding, the trial court also found that the two half-siblings were sexually assaulted, but did not determine whether Father perpetrated the abuse. The magistrate further recommended that O.W. and O.G. remain in DCS custody. A petition to rehear the matter was filed, and the children were again adjudicated as dependent and neglected by a special judge with the trial court on November 20, 2017. The children remained in DCS custody, and Father remained incarcerated at that time.

While Father was incarcerated, two permanency plans were created in 2015 and 2016. In the first plan, Father was tasked with providing financial support and completing a parenting capacity assessment and a psychosexual analysis. In the second plan, Father was instructed to provide good-faith payments, clothes and gifts to his children. Father was not allowed to contact his children under either plan. Father signed DCS's Criteria and Procedures for Termination of Parental Rights form on April 14, 2016.

Father was convicted on one count of rape of a child on April 19, 2018, for the rape of the half-sibling of O.W. and O.G. Father was later sentenced to serve thirty-five years in prison at 100% on June 29, 2018. A second count of rape of a child remained pending when the petition to terminate Father's parental rights was heard.

DCS filed a petition to terminate the parental rights of Father and Mother on May 30, 2018.[2] As grounds for termination against Father, DCS initially alleged abandonment under Tennessee Code Annotated section 36-1-113(g)(1), severe child abuse under section 36-1-113(g)(4), failure to establish parentage under section 36-1-113(g)(9)(A)(vi), conviction of rape of a child under section 36-1-113(g)(10), severe child sexual abuse under section 36-1-113(g)(11), and failure to manifest an ability and willingness to assume custody under section 36-1-113(g)(14). An amended petition added two grounds tied to Father's 35-year prison sentence, specifically that Father was sentenced to prison for more than two years for conduct against a child's half-sibling, which is a termination ground under section 36-1-113(g)(5), and that Father was

---

[2] The petition against Mother was dismissed without prejudice when the matter went to trial in 2019.

- 2 -

sentenced to ten or more years in prison and a child is less than eight years old when the sentence was entered, which is a ground for termination under section 36-1-113(g)(6).

A hearing on the petition to terminate Father's parental rights occurred on April 25, 2019. Father was contacted telephonically from prison, but he declined to participate after an off-the-record discussion with his attorney. After the attorney-client conversation, the following discussion occurred on the record:

THE COURT: Anybody wish to start opening statements?
[Counsel for Father]: Yes, Your Honor. In light of the new information that was brought to my attention, my client has decided he does not want to participate this morning.
THE COURT: He does not have to.
[Counsel for Father]: Okay.
[Counsel for DCS]: The Department will request that he's the Department's first witness, and while he's definitely free to Plead the Fifth, we would request that he stay through that, Your Honor.
[Counsel for Father]: My client doesn't wish to participate, period. So, he's going to sign  off.
THE COURT: Okay. [Father]?
[Father]: Yes, sir.
THE COURT: It's your wish not to participate in the proceedings at all or to give any testimony?
[Father]: Do what, sir?
THE COURT: You do not wish to be part of this trial?
[Father]: Yes, sir.
THE COURT: Okay. Then you're free to go. You have a good day, sir.
[Father]: You, too.

Following this discussion, DCS announced it would drop the failure to establish parentage ground from its case against Father.

Subsequently, DCS called its only witness, Starnisha Shelton, a DCS family service worker who testified about DCS's interactions with Father, O.W., and O.G., as well as Father's arrest and conviction on one count of rape of a child. In particular, Ms. Shelton testified that the children have never talked about Father in front of her and that the children had not interacted with him since December 2015. She believed the children had no attachment to Father. Ms. Shelton further testified that the children were "thriving" in their foster home and that their foster parent was willing to adopt them. On cross-examination, Ms. Shelton said that she had not spoken with Father and could not say whether he desired to parent or support his children.

In an oral ruling, the trial court found that the record showed clear and convincing evidence that Father was found guilty of rape of a child, which was sufficient evidence of the grounds of severe abuse against a child and severe child sex abuse. The trial court also found Father's thirty-five year prison sentence established clear and convincing evidence that Father would be incarcerated for more than two years for severe child abuse against a half-sibling and evidence that Father was sentenced to serve more than 10 years in prison while both children were under eight years of age. Additionally, the trial court found clear and convincing evidence that Father had abandoned both children and shown a wanton disregard for their welfare.

In conducting a best interests analysis, the trial court found Father made no adjustment in circumstances, failed to visit his children, and had no regular or meaningful relationship with his children. Additionally, the effect of removing children from their caretaker of three years would be harmful and unsafe for the children. Further, the trial court indicated that "the record should show as well on the front end that the father was contacted in prison, given an opportunity to participate in the proceedings and declined to participate or give any testimony." DCS offered to prepare a written order reflecting the trial court's finding.

A written order terminating parental rights was entered by the trial court on May 28, 2019. The written order stated that the trial court found clear and convincing evidence of all the alleged grounds save one—"rape of child . . . from which crime the child was conceived" pursuant to section 36-1-113(g)(10). Father's counsel declined to sign the party-prepared order, which terminated Father's parental rights and gave partial guardianship of O.W. and O.G. to DCS. Father timely filed this appeal.[3]

## II. ISSUES PRESENTED

Father presents the following issues for review:

1.      Whether the [DCS] failed to prove by clear and convincing evidence the required statutory element of the first prong of [Tennessee Code Annotated section] 36-1-113(g).

2.      Whether the trial court's finding of facts and conclusions of law in its final order reflect its independent judgment.

3.      Whether the trial court failed to make specific findings of facts and conclusions of law as to the statutory ground for termination of parental rights pursuant to [Tennessee Code Annotated section] 36-1-113(g).

---

[3] Father's trial counsel withdrew following the termination hearing, and substitute counsel filed the present appeal.

## III. STANDARD OF REVIEW

The Tennessee Supreme Court has previously explained that
A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interests by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523–24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.,* 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.,* 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV. DISCUSSION

### A. Grounds for Termination

While Father only appealed a single ground of termination, we are required to evaluate the findings for each ground of termination found by the trial court, whether the ground was contested on appeal or not.[4] *In re Carrington H.*, 483 S.W.3d at 525–26. Therefore, we will consider each of the six grounds that the trial court found to terminate Father's parental rights.

---

[4] The *Carrington* rule does not extend to grounds that were not sustained by the trial court and not challenged on appeal. *In re Sydney B.*, 537 S.W.3d 452, 456 n.8 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Aug. 1, 2017). As such, this Court is not required to consider the trial court's ruling dismissing the ground under section 36-1-113(g)(10).

## 1. Abandonment

The first ground found by the trial court was abandonment through wanton disregard as outlined in Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102. A ground for termination exists through "[a]bandonment by the parent or guardian, as defined in § 36-1-102[.]" When the petition was filed, the relevant definition of abandonment provided as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.. . .

Tenn. Code Ann. § 36-1-102(a)(iv) (2017).[5] On its own, incarceration cannot independently establish a ground for termination. *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Instead, "[a]n incarcerated or recently incarcerated parent can be found [to have committed] abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* Therefore, a parent's incarceration acts as a "triggering mechanism" that allows the court to examine more closely the child's situation "to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.* That parental behavior is not limited in scope to the four-month period before the parent's incarceration. *State of Tenn., Dep't of Children's Servs v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009). A parent's poor judgment and bad acts affecting the children can establish a wanton disregard for the welfare of the children. *Id.* (citing *State v. Harville*, No. E2008-00475-COA-R3-PT, 2009 WL 961782 at *7) (Tenn. Ct. App. Apr. 9, 2009). Specifically, "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867−68.

---

[5] This definition was amended in 2018 to remove the terms willful and willfully wherever they appear. *See* 2018 Tenn. Laws Pub. Ch. 875 (H.B. 1856), eff. July 1, 2018. The amended statute is inapplicable and irrelevant in this case, as the abandonment alleged in this case is based on Father's alleged "wanton disregard" for the child.

Here, Father was incarcerated from December 2015 to the date of the termination hearing. Because Father was in custody for the four months prior to the filing of the termination petition in May 2018, this definition of abandonment was clearly applicable. *See* Tenn. Code Ann. § 36-1-102(a)(iv) (requiring that the parent be "incarcerated at the time of the institution of an action or proceeding" or "incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding"). At the time of the hearing, Father was criminally charged with two counts of rape of a child and convicted on one of those counts. After examining the evidence, the trial court found that Father had raped a young child and found clear and convincing evidence that his criminal behavior, conviction, and 35-year prison sentence showed a wanton disregard for the welfare of O.W. and O.G. This court has explained that the term wanton is often defined as "'[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.'" ***In re Chandler M.***, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *4 (Tenn. Ct. App. July 21, 2014) (quoting *Black's Law Dictionary* 1719–20 (9th ed. 2009)). While a single conviction in some cases may not be sufficient to reach this level of conduct, the heinous nature of the crime that Father was found to have committed, coupled with the resulting extended incarceration period, shows that Father engaged in conduct with a wanton disregard for the welfare of his children. Therefore, we affirm the trial court's decision to find clear and convincing evidence on this ground.

### 2. Severe Child Abuse

The second termination ground found by the trial court was severe child abuse under Tennessee Code Annotated section 36-1-113(g)(4), which provides a ground for termination where "[t]he parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights[.]" Severe child abuse has various definitions. *See generally* Tenn. Code Ann. § 37-1-102(b)(27). Relevant to this case, severe child abuse is defined as "[t]he commission of any act towards the child prohibited by § 39-13-309, §§ 39-13-502 -- 39-13-504, § 39-13-515, § 39-13-522, § 39-13-527, § 39-13-531, § 39-13-532, § 39-15-302, § 39-15-402, or § 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]" Tenn. Code Ann. § 37-1-102(b)(27)(C).

In the present case, DCS requested termination on the ground of severe child abuse after Father's conviction for rape of a child on April 19, 2018 in Shelby County Criminal Court. A certified copy of Father's conviction under Tennessee Code Annotated section 39-13-522 was entered into evidence at trial. Based on this conviction, the trial court found clear and convincing evidence that Father had committed severe child abuse through Tennessee Code Annotated section 36-1-113(g)(4). Upon review of the certified copy of the conviction in the record, we agree. Here, the evidence at trial clearly and convincingly established that Father was convicted of a crime that qualifies as severe

child abuse under section 37-1-102(b)(27)(C). We therefore affirm the trial court's finding that clear and convincing evidence exists to terminate Father's parental rights through severe child abuse.

### 3. Sentence of more than two years for conduct against a child

The trial court found a third ground to terminate Father's parental rights under Tennessee Code Annotated section 36-1-113(g)(5). Under that section of the statute, parental rights can be terminated when:

> [t]he parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian. . .

Tenn. Code Ann. § 36-1-113(g)(5).

Here, DCS argued for Father's parental rights to be terminated after he was sentenced to serve 35 years in prison at 100% for his conviction for raping the half-sibling of the children.[6] Testimony at trial established that the victim lived in the same home as O.W. and O.G. at the time of the assault. Following the termination hearing, the trial court found that the Father's conviction of child rape constituted severe child abuse as defined by Tennessee Code Annotated section 37-1-102. As such, the trial court found clear and convincing evidence that Father had been sentenced to more than two years in prison for conduct against a child living in the home of his children. After reviewing the sentencing documents and evidence establishing that the rape victim lived with Father's children, we affirm the trial court's finding on this ground.

### 4. Sentence of ten or more years when the children are eight (8) years old
### 5.

The fourth ground found by the trial court to terminate Father's parental rights was outlined in Tennessee Code Annotated section 36-1-113(g)(6). As stated, a parent's rights can be terminated when

---

[6] The petition to terminate parental rights was amended to include this ground following Father's sentencing on June 29, 2018.

[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Tenn. Code Ann. § 36-1-113(g)(6).

In the case-at-bar, Father was sentenced in June 2018 to serve a full thirty-five years in prison after his conviction for rape of a child. O.W. was born in March 2013 and was five years old when Father was sentenced. O.G. was born in August 2015 and was two years old when her father was sentenced. Based on these facts, the trial court found clear and convincing evidence to terminate Father's parental rights under Tennessee Code Annotated section 36-1-113(g)(6). After reviewing Father's sentence and the children's birth certificates, we agree with the trial court's finding that Father was sentenced to more than ten years' incarceration when the children were under the age of eight.

## 6. Severe Child Sexual Abuse

The trial court found a fifth ground to terminate Father's parental rights under Tennessee Code Annotated section 36-1-113(g)(11). The statute establishes a ground to terminate parental rights when:

(i) The parent has been found to have committed severe child sexual abuse under any prior order of a criminal court;
(ii) For the purposes of this section, "severe child sexual abuse" means the parent is convicted of any of the following offenses towards a child:

(*a*) Aggravated rape, pursuant to § 39-13-502;
(*b*) Aggravated sexual battery, pursuant to § 39-13-504;
(*c*) Aggravated sexual exploitation of a minor, pursuant to § 39-17-1004;
(*d*) Especially aggravated sexual exploitation of a minor, pursuant to § 39-17-1005;
(*e*) Incest, pursuant to § 39-15-302;
(*f*) Rape, pursuant to § 39-13-503; or
(*g*) Rape of a child, pursuant to § 39-13-522; . . .

Tenn. Code Ann. § 36-1-113(g)(11)(A).

Here, as stated *supra*, Father was convicted in April 2018 of one count of rape of a child under Tennessee Code Annotated section 39-13-522. The trial court found that this conviction qualified as severe child sexual abuse and established clear and convincing

evidence as required to terminate parental rights under this statute. Consistent with our analysis *supra*, we affirm the trial court's decision to terminate parental rights on this ground.

### 7. Willingness and Ability

Finally, the trial court found clear and convincing evidence to terminate Father's parental rights by the Father's failure to "manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14). On appeal, Father argues that DCS failed to prove this statutory ground by clear and convincing evidence, that the party-prepared findings of fact and conclusions of law pertaining to this ground failed to reflect the independent judgment of the trial court, and that the trial court failed to make specific findings of fact and conclusions of law pertaining to this ground for termination. For purposes of this appeal, we will first consider Father's procedural arguments concerning this ground.

Tennessee courts may adopt party-prepared findings and legal conclusions when they accurately reflect the trial court's previous decisions and do not create doubt that the ruling represents the trial court's own deliberations and decisions. ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 315–16 (Tenn. 2014) (citations omitted). As the Tennessee Supreme Court stated:

> In the almost thirty years since ***Anderson [v. City of Bessemer City, N.C.]*** was decided, most courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied. First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision. Accordingly, reviewing courts have declined to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process, or when the record "casts doubt" on whether the trial court "conducted its own independent review, or that the opinion is the product of its own judgment[.]"

***Id.*** (citations omitted). Although ***Smith*** involved summary judgment, this Court has applied its rule in the termination of parental rights context. *See, e.g.,* ***In re Marneasha D.***, No. W2017-02240-COA-R3-PT, 2018 WL 4847108, at *3 (Tenn. Ct. App. Oct. 4, 2018); ***In re Colton B.***, No. M2017-00997-COA-R3-PT, 2017 WL 6550620, at *3 (Tenn. Ct. App. Dec. 22, 2017); ***In re Matthew T.***, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *5–6 (Tenn. Ct. App. Apr. 20, 2016). A "notably sparse" oral ruling was

present in ***In re Marneasha D.***, when the court ostensibly recited the statutory grounds for each ground for parental termination and found that those grounds were proven by clear and convincing evidence. ***In re Marneasha D.***, 2018 WL 4847108, at *5–6. This court found the difference between the oral ruling and a 33-page written order were "significant rather than minor," vacated the trial court's judgment, and remanded the matter back to the trial court. ***Id.*** at *5. As shown through ***In re Colton B.***, a 15-page written order detailing four grounds of termination and the facts that support them did not reflect the independent judgment of a trial court when that court failed to provide any findings of fact in its oral ruling and the written order was nearly a verbatim recitation of the termination petition. ***In re Colton B.***, 2017 WL 6550620, at *4. On the other hand, minor differences between an oral ruling and a subsequent written order prepared by a party do not establish a basis for reversal. ***In re Matthew T.***, 2016 WL 1621076, at *5–6.

In the present case, Father contends that the findings of fact in the written order on this particular ground were not the product of the trial court's independent judgment. Father further argues that considering only the findings that are the product of the trial court's independent judgment, the trial court's findings are deficient. To analyze this issue, we compare the trial court's oral ruling with its subsequent written order. In the oral ruling, the ground of failure to manifest an ability and willingness to assume custody was addressed as follows:

> [Counsel for DCS]: Again, Your Honor, I didn't mention this ground one way or another, and I do apologize, but I went through my list and you can rule in it however you see fit based on the proof. I did allege Failure to Manifest an Ability and Willingness to Assume Custody as to [O.W.] based on when the file was petitioned, but I forgot to mention that in my opening.
>
> THE COURT: 36-1-113(g)(14), a Failure to Manifest by Act or Omission and Ability and Willingness to Personally Assume Legal and Physical Custody or Financial Responsibility of the Child Placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child was grounds of being shown by clear and convincing proof as well. Now, is there anything else that the Guardian, State or father's attorney wish to have the Court address?

The written order, however, stated the following when analyzing this ground:

> Pursuant to Tennessee Code Annotated § 36-1-113(g)(14), Respondent [Father] has failed to manifest, by act or omission, an ability or willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in his legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the children. [Father] has been incarcerated since the children

entered foster care in 2015 at ages three months and age two and he currently remains incarcerated. Therefore, he has no ability to provide a home for the children at this time. Further, [Father] has been sentenced to thirty five years for raping the children's half-sister and he is still awaiting trial in regards to his rape of their other half sister. [Father] has no ability to provide a home for these children at any point turning [sic] their minority due to his conviction. [Father] showed his lack of willingness to care for his children by his sudden decision not to participate in the termination of parental rights trial today despite being afforded an opportunity to do so. [Father] has had no contact or communication with his children since they entered into foster care in December 2015. Ms. Shelton testified that they never ask about him. Further, both children have been residing in a pre-adoptive home with [the foster parent], since they entered into foster care. [The foster parent] is the only parent that [O.G.] can remember due to her young age when she entered into foster care. Further, [the foster parent] is familiar with and capable of dealing with O.W.'s mood disorder. Therefore, placement outside the current foster home would pose a risk of substantial harm to the children's physical and psychological welfare.

The findings of fact in the written order were clearly not present in the trial court's oral ruling.[7] The discrepancies between the two rulings are substantial, as they essentially reflect the whole of the factual basis for the trial court's determination on this ground. Indeed, in light of the overwhelming evidence in support of the other grounds for termination, this ground was apparently nearly forgotten by both DCS and the trial court. Given these discrepancies, we cannot conclude that the trial court's findings of fact in support of this particular ground for termination were the product of the trial court's independent judgment. *Smith*, 439 S.W.3d at 315–16.

Moreover, considering only the findings that were the product of the trial court's independent judgment, we conclude that they were deficient. Tennessee law is clear that trial courts must make findings of fact and conclusions of law in bench trials. *See* Tenn. Code Ann. § 36-1-113(k) ("The court shall enter an order that makes specific findings of

---

[7] The written order also states that the trial court disconnected the call that allowed Father to participate in the termination hearing "after questioning him to make sure he understood the consequences of his actions." A review of the transcript indicates that the trial court did not speak with Father about the consequences of not participating. Father raises this discrepancy, which DCS does not dispute, only with regard to the trial court's finding that Father failed to manifest an ability and willingness to parent his children. Although we admonish DCS from preparing orders that do not accurately reflect trial court proceedings and caution trial courts to ensure that orders are correct before entry, we cannot conclude that this admitted discrepancy has any effect on the other five grounds found by the trial court and affirmed by this Court. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

fact and conclusions of law [following termination of parental rights trials].”); Tenn. R. Civ. P. 52.01 (requiring findings of fact and conclusions of law in bench trials). “There is no bright-line test by which to assess the sufficiency of factual findings, but ‘the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.’” ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C Federal Practice and Procedure § 2579, at 328). The trial court’s oral ruling as to this ground was limited to the statutory language in section 36-1-113(g)(14) and does not include the necessary findings of fact that would establish clear and convincing evidence.

In sum, we have significant doubt that the detailed findings contained in the trial court’s written order as to this ground are the product of the trial court’s independent judgment. Considering only those findings that were clearly made by the trial court, we conclude that insufficient findings of fact were made to support this ground for termination. Consequently, we vacate the trial court’s finding that a ground to terminate Father’s parental rights exists based on Father’s failure to manifest a willingness or ability to assume custody or financial responsibility for the children.

While we vacate the trial court’s determination regarding willingness and ability, we decline to remand the issue for reconsideration. This Court has previously declined to remand a parental termination case when “remanding for reconsideration of these grounds would only further prolong these proceedings without altering the outcome.” ***In re Abbigail C.***, No E2015-00964-COA-R3-PT, 2015 WL 6164956, at *14 (Tenn. Ct. App. Oct. 21, 2015). Here, as we have discussed *supra*, five grounds to terminate Father’s parental rights were established by clear and convincing evidence. As discussed *infra*, we affirm the trial court’s determination that termination is in the best interests of the children. Clear and convincing evidence to support the ground of failure to manifest a willingness and ability to parent the child is therefore not necessary to uphold the termination of Father’s parental rights. As such, we decline to remand this issue to the trial court for reconsideration.[8]

## B. Best Interests

After establishing at least one ground for termination by clear and convincing evidence, we further consider whether the trial court correctly determined that termination of Father’s parental rights was in the best interests of the children involved. While Father did not raise best interests as an issue on appeal, we are again required to consider the best interests of the child whether a parent argued the issue or not. ***In re Carrington H.***, 483 S.W.3d at 525–26. After establishment of a ground for termination, “the interests of the child and parent diverge, and the court’s focus shifts to consider the

---

[8] Father’s argument that clear and convincing evidence was not presented on this ground is pretermitted by our ruling.

child's best interest." *In re Audrey S.*, 182 S.W.3d at 877. The best interests of the children may not always lead to termination, even if a parent is deemed unfit by a court. *Id.* To determine whether termination of parental rights is in a child's best interests, we shall consider, but are not limited to, the following factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). Further, the Tennessee Supreme Court has explained that:

> Facts considered in the best interests analysis must be proven by a preponderance of the evidence, not by clear and convincing evidence. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. When considering these statutory factors, courts must remember that the child's best interests are viewed from the child's, rather than the parent's, perspective. Indeed, a focus on the perspective of the child is the common theme evident in all of the statutory factors. When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child.

*In re Gabriella D.*, 531 S.W.3d 662, 681–82 (Tenn. 2017) (internal citations omitted). More than a rote examination or simple counting of the statutory factors is required to determine the best interests of a child. *Id.* at 682. Each analysis must remain "factually intensive," and consideration of the factors should be rooted in each case's unique facts and circumstances. *Id.* Courts must examine each statutory factor with any relevant proof presented by the parties. *Id.*

In the present case, we agree with the trial court's conclusion that termination of Father's parental rights was in the best interests of O.W. and O.G. When the hearing on the termination petition occurred, Father was incarcerated on a lengthy sentence; he therefore could not make an adjustment of circumstances so as to provide a safe home for the children that would support their best interests. *See* Tenn. Code Ann. § 36-1-113(i)(1). While DCS created permanency plans for the children, Father did not broadly participate in its recommendations or act in a way that would make lasting adjustments appear possible. *See* Tenn. Code Ann. § 36-1-113(i)(2). Father's no-contact order made it impossible to visit his children, and he made no effort to lift the no-contact order before the parental termination hearing occurred. Moreover, Father's inability to visit the children was the result of his decision to engage in heinous criminal conduct. *See* Tenn. Code Ann. § 36-1-113(i)(3). The lack of interactions, combined with the apparent lack of communication between Father and his children, show that Father has little to no meaningful relationship with the children. *See* Tenn. Code Ann. § 36-1-113(i)(4). A change of caretakers and physical home would have a profoundly negative effect on the children, as both O.W. and O.G. are well-adjusted to their foster home, where they have lived longer than they lived with a father whom they never interacted since his arrest. *See* Tenn. Code Ann. § 36-1-113(i)(5). Father's conviction of child rape against the children's half-sibling establishes that Father sexually abused at least one other child who lived in the same household as O.W. and O.G. *See* Tenn. Code Ann. § 36-1-113(i)(6). Further, Father's incarceration would make it impossible for him to provide a healthy,

stable and safe physical home for the children. *See* Tenn. Code Ann. § 36-1-113(i)(7). The record does not indicate whether Father has received any mental or emotional treatment since his incarceration began in 2015. *See* Tenn. Code Ann. § 36-1-113(i)(8). As Father has been incarcerated since the children were placed in foster care, he has not paid child support during that time. *See* Tenn. Code Ann. § 36-1-113(i)(9).

Upon review of these factors, we agree with the trial court's conclusion that the best interests of O.W. and O.G. are served by terminating Father's parental rights. The children currently live with a stable foster family that wishes to adopt them. In contrast, Father has no contact with the children due to his own criminal conduct and therefore no relationship with them. According to Ms. Shelton, the children do not even mention Father. Further, Father was convicted of a heinous sex crime that will keep him in prison for 35 years, long after O.W. and O.G. reach adulthood. With that in mind, the trial court did not err in finding clear and convincing evidence that parental termination was in the children's best interests. As multiple grounds for termination also exist, we affirm the termination of Father's parental rights.

## V. CONCLUSION

The judgment of the Shelby County Juvenile Court is affirmed in part and vacated in part. The termination of O.W. Sr.'s parental rights is affirmed. Costs of this appeal are taxed to Appellant O.W. Sr., for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE